UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JODI VINSON,

    Applicant,

v.                                                            CASE NO. 8:15-cv-2848-T-23AEP

SECRETARY, Department of Corrections,

    Respondent.
_____/

**O R D E R**

Vinson, through retained counsel, applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges her convictions for use of a child in a sexual performance (counts 1 and 2), possession of child pornography (counts 3–42), and promotion of a sexual performance of a child less than eighteen years old (count 43), for which convictions Vinson is imprisoned for sixty years. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 11) The respondent argues (1) that ground one (which asserts four claims) is not exhausted and, as a consequence, is procedurally barred from federal review and (2) that ground two (which asserts two claims) lacks merit. The respondent admits the application's timeliness. (Response at 22, Doc. 11)

# I. FACTS[1]

While monitoring a particular website, a detective with the Polk County Sheriff's Office noticed a file with words in the title that are associated with child pornography, and the officer was able to trace the file to a residence in Lakeland, Florida. A residence was identified as having the computer associated with the file. Upon executing a search warrant, the officers found that Ricky Bailey (Vinson's boyfriend) shared the residence with Vinson, her two young daughters, and a few other adult males. The computer was located in a common area and was accessible to anyone in the home.

Vinson admitted that she owned the computer. She admitted to having accessed the website identified by the officers but claimed that she accessed the website to download music files. A search of the computer confirmed that music files were downloaded to the computer, but among those files were numerous files with titles indicating the file contained child pornography.

Inside the home the officers also found a safe, for which only Vinson and Bailey had a key. The safe contained, among other personal effects, twenty-five compact discs ("CDs"). Vinson claimed that she stored music CDs inside the safe. None of the twenty-five CDs retrieved from the safe contained music; all but two of the CDs contained child pornography and some of the CDs had non-pornographic images of Vinson, her two young daughters, and Bailey interspersed among the

---

[1] This summary of the facts derives from Vinson's brief on direct appeal. (Respondent's Exhibit 2A)

pornographic images. The computer and two of the CDs had a total of six sexual explicit photographs of Vinson's two daughters — five photographs of Vinson's older daughter and one photograph of her younger daughter. One of the photographs of the older daughter (nine years old when photographed) was the basis for a charge of use of a child in a sexual performance and the one photograph of the younger daughter (six and a half years old when photographed) was the basis for the second charge of use of a child in a sexual performance. The other sexually explicit photographs of her daughters were the basis for separate charges of possession of child pornography. Vinson admitted both to taking the photographs of her daughters at Bailey's request and to sending the photographs to Bailey's email. Bailey was charged as Vinson's co-defendant.

## II. GROUND ONE DEFAULTED IN STATE COURT

Vinson asserts two grounds for relief in her application. Ground one, which contains four parts, is not, however, entitled to a review on the merits because Vinson failed to properly present the federal claims to the state courts. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

**Ground One:**

Vinson alleges that the trial court erred by denying her motion for judgment of acquittal at the close of the prosecution's case. Vinson identifies four specific examples:

> Petitioner's Fifth and Fourteenth Amendment rights to due process were violated where: (i) as to counts 3 and 11–42, the evidence was insufficient to establish guilt beyond a reasonable doubt; (ii) as to count 43, the evidence was insufficient to establish beyond a reasonable doubt the petitioner promoted the Baby J file; (iii) as to count 43, the evidence was insufficient to prove beyond a reasonable doubt that the petitioner victimized more than one person; and (iv) as to counts 3 and 11–42, the evidence was insufficient to establish beyond a reasonable doubt that the petitioner knowingly possessed child pornography, as required by statute.

Although now characterized as a violation of her federal rights, Vinson presented each claim to the appellate court as a state law issue, not as a constitutional or federal issue. (Respondent's Exhibit 2A)

Federal habeas relief is not available to correct a violation of state law. Under Section 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1981) ("[A] 'mere error of state law' is not a denial of due process."). Briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds, as *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995), explains:

> If state courts are to be given the opportunity to correct alleged
> violations of prisoners' federal rights, they must surely be
> alerted to the fact that the prisoners are asserting claims under
> the United States Constitution. If a habeas petitioner wishes
> to claim that an evidentiary ruling at a state court trial denied
> him the due process of law guaranteed by the Fourteenth
> Amendment, he must say so, not only in federal court, but in
> state court.

*Accord Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Federal review of ground one is barred because Vinson failed to "fairly present" her federal claim to the state courts.

### III. GROUNDS REVIEWABLE ON THE MERITS

Vinson is entitled to a review of the merits of the two claims asserted in ground two, which present the claims of ineffective assistance of counsel that were rejected in the post-conviction proceedings.

### A. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 134 S. Ct. at 1702). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to

second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. "The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 138 S. Ct. at 1192.

The state appellate court on direct appeal affirmed Vinson's convictions and sentence. (Respondent's Exhibit 2C) In a *per curiam* decision without a written opinion the state appellate court affirmed the denial of Vinson's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 3 at 53–55) The state appellate

- 8 -

court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Vinson bears the burden of overcoming by clear and convincing evidence a state court's fact determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of

- 9 -

rebutting the presumption of correctness by clear and convincing evidence."

28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Vinson's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 3) Vinson's federal petition presents the same grounds of ineffective assistance of counsel that Vinson presented to the state courts.

### **B. Ineffective Assistance of Counsel**

Vinson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so

> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *See Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Vinson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Vinson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Vinson cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation is discussed in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make *reasonable* investigations or make a *reasonable* decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of

- 12 -

> defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Vinson must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential

*Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

The state post-conviction court conducted an evidentiary hearing and denied the claims of ineffective assistance of counsel, and the state court specifically recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 3 at 54) Because the state court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel, Vinson cannot meet the "contrary to" test in Section 2254(d)(1). Vinson instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

**Ground Two:**

Vinson asserts two claims of ineffective assistance of counsel. First, Vinson alleges that counsel failed to disclose evidence to her, specifically, that a fingerprint on two of the compact CDs recovered from the safe were co-defendant Bailey's prints. After conducting an evidentiary hearing, the state post-conviction denied this

claim because Vinson failed to prove prejudice (Respondent's Exhibit 3 at 54) (italics original) (citations to transcript omitted):

> In claim 1, the Defendant alleges trial counsel was ineffective for withholding exculpatory evidence. The Defendant attaches to her amended motion a *Results of Latent Print Examination* prepared by the Polk County Sheriff's Office which indicates latent fingerprints from two CDs were identified as from Ricky Bailey, the co-defendant. The Defendant argues that had this information been presented at trial, it would have shown she could not have possessed the CDs, containing the child pornography.
>
> Counsel did in fact argue at trial that the fingerprints did not belong to the Defendant. Although at the time trial counsel did not appear to know the fingerprints had been identified as Rickey Bailey's, he did emphasize to the jury that the State did not positively identify these as the Defendant's, and therefore they could have belonged to the co-defendant. The evidence at trial demonstrated the CDs were located inside a locked safe, which only the Defendant and co-defendant had access to. Inside the safe were several documents and other items which belonged to the Defendant. Even if trial counsel had argued that the fingerprints were positively identified as the co-defendant's, this argument would in no way negate the Defendant's guilt of the jointly possessed items. Furthermore, a theory of constructive possession was also argued. As this evidence would have no effect on the proceeding, the Defendant cannot show prejudice. Therefore, claim 1 is DENIED.

*Strickland* requires proof of both deficient performance and prejudice. The post-conviction court, without addressing the performance requirement, rejected Vinson's claim based on a lack of prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). To prove that counsel's performance was prejudicial, Vinson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the

- 15 -

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The state court reasonably applied *Strickland* in determining that Vinson failed to satisfy the prejudice requirement because (1) some of the personal property recovered from inside the safe admittedly belonged to Vinson, (2) only Vinson and Bailey had a key to the safe, and (3) under state law Vinson jointly possessed each item inside the safe. Vinson's record includes adequate direct and circumstantial evidence — including admitting to creating some of the child pornographic images and Vinson's lying that some of the CDs were her music CDs — from which a reasonable jury could conclude beyond a reasonable doubt that Vinson knew the CDs contained child pornography.

Second, Vinson alleges that counsel failed to investigate and present evidence that Bailey both expressed surprise that Vinson was charged and stated that Vinson was innocent. After conducting an evidentiary hearing, the state post-conviction court denied this claim for lack of merit (Respondent's Exhibit 3 at 55):

> In claim 2, the Defendant alleges trial counsel was ineffective for failing to present into evidence a recorded telephone conversation between herself and the co-defendant. The Defendant alleges the co-defendant makes exculpatory statements by saying: "Why should you get arrested? You didn't do anything."
>
> Taken as it is, this conclusory statement of innocence made by the co-defendant does not negate any of the evidence presented by the State. To provide any meaningful details of the conversation, either the Defendant, or co-defendant, would have had to testify. It is not alleged the co-defendant was available to testify at trial, however, he likely would have

> exercised his constitutional rights not to incriminate himself
> with his own pending charges. The Defendant opted herself
> not to testify.
>
> Even if this generic statement were to be entered into evidence,
> there was testimony by several detectives, and recorded
> interviews with the Defendant, where the Defendant admitted
> to taking part in the criminal wrongdoing by taking explicit
> photographs of her own daughters. The Defendant's defense
> at trial remained the "duress" exerted upon her by the
> co-defendant. As the conclusory statement, even if entered
> into evidence, would not have negated any part of the State's
> case, and would contradict her own defense, she has failed to
> show any prejudice. Accordingly, claim 2 is DENIED.

The post-conviction court correctly determined (1) that Vinson failed to show how trial counsel could have introduced the co-defendant's allegedly exculpatory statements despite Vinson's choosing not to testify and despite Vinson's failing to show that the co-defendant was available and willing to testify without invoking his right not to incriminate himself and (2) that the allegedly exculpatory statement would not overcome Vinson's admitting taking sexually explicit photographs of her two young daughters and emailing the photographs to Bailey. The state court reasonably applied *Strickland* in determining that Vinson failed to prove that she was denied the effective assistance of counsel.

Vinson fails to meet her burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), recognizes, an applicant's burden under Section 2254 is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to
> adjudicate claims of constitutional wrong, AEDPA erects a
> formidable barrier to federal habeas relief for prisoners whose

claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Vinson's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Vinson and close this case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Vinson is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Vinson must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Vinson is entitled to neither a COA nor leave to appeal *in forma pauperis*.

- 18 -

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Vinson must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 6, 2019.

/s/ Steven D. Merryday
_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE